[S. F. No. 12035. In Bank.—November 27, 1928.]

JOSEPH V. PERELLI–MINETTI et al., Appellants, v. W. H. LAWSON et al., Respondents.

E. V. McKenzie, W. F. Cowan and Harry A. McKenzie for Appellants.

Haven, Athearn, Chandler & Farmer, Athearn, Chandler & Farmer and Walter Hoffman for Respondents.

THE COURT.—Upon the very earnest insistence of appellants that the decision of this case by the district court of appeal, affirming the judgment of the trial court, did not correctly state the law and had done an injustice to the appellants, a hearing was granted by this court to enable it to carefully study the record upon appeal and the contentions of the parties with reference thereto. After careful consideration, we are satisfied with the decision of the district court of appeal of the state of California, in and for the third appellate district, and hereby adopt the opinion of said court, written by Presiding Justice Finch thereof, as follows:

"The plaintiffs, who are beneficiaries under the will of A. J. Perelli-Minetti, deceased, brought this action for the partition of two tracts of land, to quiet their alleged title to

an undivided half interest therein, to enjoin the defendant Lawson. from selling or mortgaging the crops growing on the land, and to cancel a mortgage given by him upon such crops. Judgment was entered in favor of the defendants and the plaintiffs have appealed.

"Prior to June 9, 1921, Lawson S. Scatena and Perelli-Minetti were the owners of the lands in suit, the legal title standing in the names of those persons, without further designation. They had operated the lands as partners, growing grapes thereon and manufacturing wine and grape juice. It is uncertain whether or not the real estate was partnership property, but the court found that, at the time stated, Lawson and Perelli-Minetti each owned an undivided one-third interest in the land, and therefore it will be assumed, for the purposes of this opinion, that the lands were not then partnership property. The court found:

" 'In the latter part of May, and prior to June 9, 1921, A. J. Perrelli-Minetti and W. H. Lawson entered into an agreement for the formation of a partnership concerning the above-described lands, and did form a partnership for the purpose of buying and selling said lands and other lands and the growing, cultivating, harvesting and selling of the crops therefrom, and for such other purposes incident thereto and necessary therein as might be deemed proper by said copartners . . . (and) agreed that said partnership should be operated under the firm name and style of Lawson & Perelli, and that the profits and losses arising out of the operation of said lands should be divided equally between them. Pursuant to said partnership agreement, and for the purposes of said partnership, on or about June 9, 1921, A. J. Perelli-Minetti and W. H. Lawson purchased from S. Scatena the remaining one-third interest of S. Scatena in the lands.'

" 'Pursuant to said partnership agreement and partnership, A. J. Perelli-Minetti and W. H. Lawson forthwith took possession of said lands and did business thereon under the firm name and style of Lawson & Perelli, incurred obligations, offered for sale, cultivated and maintained said lands, raised crops thereon and harvested the same therefrom, for the joint benefit of each of them, and each of them shared equally in the cost of maintenance and operation of said lands, and in the cost of operating the same, and the

planting and harvesting of the crops produced on said lands, and shared equally in all profits and losses arising or accruing out of the acquisition of said lands, or the cultivating, planting, harvesting or marketing of the crops produced on said lands.

" 'Pursuant to said partnership agreement, and pursuant to said partnership, and on the 9th day of June, 1921, partnership books were opened and kept under the name of Lawson & Perelli. Said lands . . . were carried on said books as assets of the partnership of Lawson & Perelli. For the years 1921, 1922 and 1923 written income tax reports were returned to the United States government on partnership form, signed "Lawson & Perelli, by A. J. Perelli-Minetti," listing said lands as an asset of the partnership of Lawson & Perelli, and, among other things, indicating the amount of profits and losses concerning said partnership of Lawson & Perelli arising from the operation of said lands.

" 'From the time of said agreement of partnership until the death of A. J. Perelli-Minetti on or about December 12, 1924, A. J. Perelli-Minetti and W. H. Lawson did business as partners, and pursuant to said partnership agreement, under the firm name and style of Lawson & Perelli, and cultivated said lands in the manner provided in said agreement of partnership.

" 'Upon the death of A. J. Perelli-Minetti on or about December 12, 1924, W. H. Lawson, as surviving partner of the partnership of Lawson & Perelli, took control of, and at all times thereafter remained in control of, and now is in control and possession and entitled to the possession of said lands and the crops growing thereon and the appurtenances and the whole thereof.

" 'A. J. Perelli-Minetti and W. H. Lawson during said partnership executed on behalf of the partnership of Lawson & Perelli a mortgage upon the lands described in parcel 1, exhibit "A," to the California Joint Stock Land Bank, a corporation organized and existing under the laws of the State of California, as security for a promissory note in the sum of $35,000. Said mortgage is an outstanding obligation of the partnership of Lawson & Perelli.

" 'During said partnership A. J. Perelli-Minetti and W. H. Lawson, in behalf of said partnership of Lawson & Perelli, made and executed a mortgage to S. Scatena on the

lands described in parcel 2, exhibit "A," as security for the payment of the sum of $41,000. Said mortgage is an outstanding obligation of said partnership.

"'Said mortgages were carried on the partnership books of Lawson & Perelli as a liability against said partnership. For the years 1921, 1922 and 1923, written income tax reports were filed with the United States government on partnership forms. Said income tax reports were signed "Lawson & Perelli, by A. J. Perelli-Minetti," and said mortgages were listed on said reports as a liability against said partnership.

"'W. H. Lawson, as surviving partner of said partnership of Lawson & Perelli, has, since the death of said A. J. Perelli-Minetti, at all times been and now is in the exclusive and entire control of said lands hereinbefore described, and the crops grown thereon, and all of the assets of said partnership. Said W. H. Lawson claims no interest in the assets of said partnership other than an interest as surviving partner of said partnership of Lawson & Perelli, and, as such surviving partner, the right to liquidate the affairs thereof. -

"'On or about the 11th day of April, 1925, W. H. Lawson, as surviving partner of Lawson & Perelli, and pursuant to his duties as such, made a chattel mortgage on growing crops on the lands described in exhibit "A" to the Pacific Fruit Exchange, a corporation, duly organized and existing under the laws of the State of California, as security for a sum of money not to exceed $15,000 advanced to said W. H. Lawson as surviving partner. Said W. H. Lawson borrowed said money in pursuance of his duties as said surviving partner, and it may be used only in liquidating the affairs of said partnership, and said mortgage was made, and the proceeds thereof may be used and are intended by him to be used only pursuant to his duties as such surviving partner.

"'Upon the death of A. J. Perelli-Minetti, and immediately thereafter and ever since, W. H. Lawson, as such surviving partner, took possession and has maintained possession of the assets of said partnership, and has proceeded to liquidate the affairs of the same, paying bills of said partnership, collecting income accruing to said partnership, and caring for the lands, crops and appurtenances thereto. Said W. H. Lawson has been diligent and faithful in the perform-

ance of said duty as surviving partner and in the liquidation of the affairs of said partnership.

" 'The assets of said partnership consist of the lands described in exhibit "A" and the growing crops and personal property located on said lands, wine, machinery, trays, cooperage and miscellaneous incidental property connected therewith.

" 'It is necessary for W. H. Lawson, as surviving partner of said partnership of Lawson & Perelli, to have exclusive control and possession of all of the assets of said partnership for the purpose of liquidating the affairs of said partnership.

" 'At the time of the death of said A. J. Perelli-Minetti, on or about the 12th day of December, 1924, there were outstanding obligations existing against said partnership and bills receivable uncollected by said partnership. There are now outstanding obligations existing against said partnership and accounts receivable still uncollected. No accounting has ever been had as against any parties concerned or interested in said partnership. The affairs of said partnership are not yet wound up or liquidated.'

"In appellant's opening brief it is said: 'There is only one primary issue in the case: Were the two ranches held as partnership land or were the two owners tenants in common thereof? . . . Even if the land be deemed partnership property, still, unless partnership creditors' rights intervened the land would descend to the heirs or be subject to testamentary disposition. . . . Therefore, we contend two propositions, that we are tenants in common; and if we are not tenants in common, there is no reason for any administration or handling of partnership affairs by the partner.'

"The partnership agreement was not in writing. 'A partnership in lands may be formed by an agreement in parol. Such parol agreement is valid and may be enforced between the parties.' (*Musick Cons. Oil Co.* v. *Chandler*, 158 Cal. 7, 12 [109 Pac. 613, 614]; *Koyer* v. *Willmon*, 150 Cal. 785, 787 [90 Pac. 135]; *Scott* v. *Junquist*, 179 Cal. 7, 9 [175 Pac. 412].) The relations between the partners were confidential and each was a trustee for the other in all partnership transactions. (*Koyer* v. *Willmon, supra*.) 'If property owned by one of the partners before the organization of the firm has been used for partnership purposes, it

must be determined from the partnership agreement and the conduct of the parties, whether it has become a part of the firm property or remains the property of the one partner. Thus a lease of premises occupied by the firm business procured by one partner before formation of the partnership may become firm property without formal assignment, if it is so understood and the partners regard it as such.' (Rowley's Modern Law of Partnership, sec. 277.) 'It is not necessary to show that the partnership property was purchased with partnership funds. Land standing in the name of an individual partner may have been contributed by him as his portion to the firm assets. The true method of determining, as between the partners themselves, whether land standing in the name of the individuals is or is not to be treated as partnership property, is to ascertain from their conduct and course of dealing the understanding and intention of the partners themselves, which, when ascertained, should unquestionably control.' (*Johnson* v. *Hogan,* 158 Mich. 635 [37 L. R. A. (N. S.) 889, 123 N. .W. 891].) In *McNab* v. *Mills,* 199 Cal. 231 [248 Pac. 657], while they were the owners of a tract of land as tenants in common, the plaintiff and the defendant entered into an oral agreement of partnership, one of the terms of which was that the land 'was to become the capital of the partnership and was to become partnership property.' The land was thereafter operated by the partners as partnership property in accordance with the terms of the oral agreement. The court said: 'While no written agreement expressing the terms and conditions of the partnership alleged to exist . . . was entered into, we are satisfied from a careful reading of the evidence that the actions, transactions, conduct and understanding of the parties amply support the finding of the trial court that they entered into a partnership, which continued to exist. . . . In the language of the trial court: '. . . Even though the ranch property in question may have originally come to the parties in the character of tenants in common, this character was destroyed by the parties having farmed and operated it upon joint account and as partnership property and by their acts thereby made it partnership assets.'

"Appellants discuss the subject of trusts at considerable length, but the facts found by the court bring the case so clearly within the principles of law announced in the fore-

going decisions that it is deemed unnecessary to pursue the subject further.

■ "Appellants contend that the interest of Perelli-Minetti in the land was community property, and that in such a case 'no partnership lien can be created in land unless a wife joins in the conveyance.' At the time of the organization of the partnership, section 172a of the Civil Code, enacted in the year 1917 (Stats. 1917, p. 829), provided: 'The husband has the management and control of the community real property, but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed or encumbered.' It need not be determined whether that section is applicable in partnership matters. The evidence does not show that the property in question was community property. Mrs. Perelli-Minetti testified that she was married 22 years ago; that at the time of their marriage Mr. Perelli-Minetti had no property and that thereafter he acquired no property 'by virtue of someone dying, any wills bequesting anything of that kind.' Property acquired by gift after marriage is separate property. (Civ. Code, sec. 163.) The evidence does not show when the money with which Perelli-Minetti purchased the property was acquired. If acquired prior to the year 1917, section 172a is not applicable. (*Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22]; *Staton* v. *Buster,* 79 Cal. App. 428 [249 Pac. 878].)

■ "It is contended that the court erred in excluding evidence tending to prove that Scatena, Lawson and Perelli-Minetti owned the lands in question as tenants in common during the existence of their partnership. In their closing brief appellants say that the court found 'each of the individuals (Scatena, Lawson and Perelli-Minetti) owned a one-third interest in both ranches as tenants in common.' This last statement is correct. Since the issue was found in appellants' favor, the exclusion of evidence tending to prove that issue was of no possible effect against them.

"Appellants specify many particulars in which they contend that 'the evidence is insufficient to justify the decision and judgment.' It is unnecessary to follow these specifications in detail. The tracts of land referred to in the findings were known as the Geyserville ranch and the Santa

Rosa ranch. There was a winery on the Geyserville ranch. Lawson testified: 'We agreed like this—if we buy, . . . we will then go into a partnership . . . and make wine for ourselves, or grape juice, in the Geyserville ranch. . . . We agreed to take over . . . the Santa Rosa ranch, work it on up into condition and sell it in the next year at all the profit we could get out of it. . . . We would buy the Santa Rosa ranch, . . . Perelli-Minetti and I, and sell it. We would hold on to the Geyserville ranch, where the grape juice plant was, and manufacture grape juice and our business would be under the name of Lawson and Perelli, . . . as partners. . . . We went to Mr. Norton's office, and drew up a contract taking over all of the property of Scatena, Lawson and Perelli, except the wine, and we went from then on, we were under the name of Lawson and Perelli, the firm name of Lawson and Perelli, and partners.' The lands were thereafter carried as partnership property on the firm's books, entered as such in the income tax statements, and treated by the partners as partnership property in all respects as stated in the findings. The partners maintained joint bank accounts. Up to April 26, 1923, moneys deposited therein were made payable 'to either, or the survivor.' After that time both their signatures were required. It was stipulated that 'all of the checks prior to that time . . . were in the name of Lawson and Perelli-Minetti, were signed . . . by either Mr. Lawson or Mr. Perelli-Minetti, the great vast majority of them all being signed by Mr. Perelli-Minetti.' It was also stipulated that 'subsequent to July, 1923, . . . it was agreed between them that all bills, as far as possible, should be paid, one-half by each, and that all the receipts coming in should be divided at the time, one-half going to Mr. Lawson and the other half going to Mr. Perelli, and that as far as they could consistently they followed that out up until the time of the death of Mr. Perelli.'

"Other than as appears from this stipulation, the business of the partnership was conducted in the same manner after July, 1923, as before that time. Nothing was done to dissolve the partnership and there was no accounting between the partners. Most of the objections to the sufficiency of the evidence are covered by what has already been said and the others are deemed to be without merit. The material findings are amply supported by the evidence.

■ "A general partnership is dissolved by the death of a partner. (Civ. Code, sec. 2450, subd. 3.) Lawson, as the surviving partner, had 'the right to continue in possession of the partnership, and to settle its business.' (Code Civ. Proc., sec. 1585.) 'A partner authorized to act in liquidation may collect, compromise or release any debts due to the partnership, pay or compromise any claims against it, and dispose of the partnership property.' (Civ. Code, sec. 2461; *Cooley* v. *Miller & Lux,* 168 Cal. 120, 138 [142 Pac. 83].) 'The surviving partner must settle the affairs of the partnership without delay.' (Code Civ. Proc., sec. 1585.) Since more than three years have elapsed since the death of Perelli-Minetti, it is probable that the affairs of the partnership in question here have been settled, but if they have not, then the plaintiffs may compel a settlement in an appropriate proceeding for that purpose."

The judgment is affirmed.